Pages 1 - 17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO

```
FINJAN, INC.                      )
                                  )
                                  )
          Plaintiff,              )
                                  )
  vs.                             ) No. C 18-6555 JD
                                  )
FORTINET, INC.                    )
                                  ) San Francisco, California
          Defendant.              ) Thursday
                                  ) January 3, 2019
_____) 10:00 a.m.
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          KRAMER LEVIN NAFTALIS & FRANKEL, LLP
                            990 Marsh Road
                            Menlo Park, California 94025
                       **BY: PAUL J. ANDRE, ESQ.**


**For Defendant:**          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                            50 California Street
                            Suite 2200
                            San Francisco, California 94111
                       **BY: SEAN SANG-CHUL PAK, ESQ.**
                            **IMAN LORDGOOEI, ESQ.**


*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 *Official Reporter - US District Court*
                 *Computerized Transcription By Eclipse*

```
 1   Thursday - January 3, 2019                              11:14 a.m.
 2                          P R O C E E D I N G S
 3                               ---oOo---
 4
 5        THE CLERK:  Calling Civil 18-6555, Finjan, Inc.
 6   versus Fortinet, Inc.
 7      Counsel.
 8        MR. ANDRE:  Good morning, Your Honor.  Paul Andre for
 9   Finjan.
10        MR. PAK:  Good morning, Your Honor.  Sean Pak of
11   Quinn Emanuel on behalf of Fortinet.  With me is Iman
12   Lordgooei.
13        THE COURT:  All right.  Well, this is quite a
14   situation, and the proposal was not particularly useful.  We
15   don't reallocate court cases between colleagues.  We just don't
16   do that.  We have a related case mechanism where the lower
17   number judge has unfettered discretion, but we do not have a
18   mechanism by which one judge just reassigns a case.  So that's
19   a non-starter.
20      What I thought you were going to do, and this is what I
21   would like you to give some attention to after today, is
22   working out how these issues will be presented, at least to me.
23   I'm going to let the other judges worry about their own cases.
24   But I'm at the tail end of what appears to be close to 12
25   cases, 11 or 12 cases.  And everybody seems to agree that at
```

1  least three of those cases, if not more, are going to address
2  each and every patent in this case and, apparently, every claim
3  in dispute.
4      So we have to recognize that that is just not the way to
5  roll.  We just can't do that.
6      So I want some thinking from both of you on if the case is
7  not stayed long term, then how are we going to package these
8  issues for me?  For example, I do not want to be the fifth,
9  sixth or seventh judge construing the same claim.  That just
10 makes no sense.
11     So it appears to me, Finjan, you ought to be wedded to
12 whatever you've told a prior judge and not on a pick-and-choose
13 basis.  Like, you hit it out of the park with one judge and got
14 killed by another, we're not going to do that.  There has to be
15 some more equitable way of doing that.
16     Mr. Pak should be free to offer any arguments he has,
17 because he hasn't had a chance to say anything, and he may come
18 up with some brilliant idea that nobody so far has come up
19 with.  But he at least gets his right to take a stab at that.
20 So I'm not going to constrain him that way.
21     This is just the tip of the iceberg.  I mean, there are
22 expert reports.  There are *Daubert* issues.  There are damages
23 models.  I mean, this is the whole package.  Okay?
24     So just saying throw this case to Judge Freeman is not an
25 answer and it's not possible under our local rules.

1  So I'm going to put you on hold for another 30 days.  I'm
2  staying everything in the case.  I want you two to
3  meet-and-confer, come up with some kind of proposal, okay, that
4  addresses these issues.
5  You're both experienced lawyers.  I don't think I need to
6  spell everything out.  You just know you're going to have to
7  work this up in some way that is, you know, fair and
8  responsible to the parties, but also to the fair and efficient
9  administration of justice.  Okay?
10  And you should take into account the PTAB things, too.  I
11  mean, I think Mr. Pak said in his filing the PTAB claim
12  construction is going on as well; is that right?
13  **MR. PAK:**  That's right, Your Honor.
14  **THE COURT:**  Okay.  I don't know how this case came to
15  be this way.  I just -- I don't know whether it just sort of
16  grew organically or whether it was a strategic decision or
17  what.
18  But I know I and at least one other judge on this floor
19  have taken an interest in making sure that the firm does not
20  just keep throwing up fronds without some reasonable pruning
21  and attention to managed growth.
22  Okay?  That's your farming, farming analogy for the day.
23  **MR. PAK:**  Your Honor?
24  **THE COURT:**  Yes, Mr. Pak.
25  **MR. PAK:**  I just wanted to entertain one potential

proposal that we laid out in the papers, and I apologize for late filing. We do want to take into account some of the comments --

**THE COURT:** I set that date. That's perfectly fine.

**MR. PAK:** Thank you, your Honor.

We heard very loudly and clearly from Judge Tigar, who had the hearing yesterday --

**THE COURT:** Oh, what happened?

**MR. PAK:** So he was also -- he was also struggling with these issues. I think he recognizes that there is balancing of interest here and he doesn't want to stay everything indefinitely and what he was looking for was some kind of compromise.

What we thought about was in this case, as your Honor mentioned, there are three cases, the *Juniper* case, the *Check Point* case and the other case, where there is complete overlap with the nine patents in this case.

So rather than staying everything pending the resolution of all of the 12 cases or so, what we were thinking is maybe a targeted stay that focuses on those three cases where we have Judge Alsup and other judges taking an active role in screening through all these issues that Your Honor mentioned, whether it was damages, *Daubert* motions, one-on-one motions, inequitable conduct.

And I believe that those cases are -- at least in Judge

1   Alsup's courtroom, they are going on a --

2           **THE COURT:**  One is done; right?

3           **MR. PAK:**  One is done.  He is got others in the
4   pipeline.  And we also have *Markman* hearings coming up in the
5   other two cases.

6           **THE COURT:**  Let me just jump in.

7           **MR. PAK:**  Sure.

8           **THE COURT:**  That alone invokes preclusion issues,
9   when you have a jury verdict.

10          **MR. PAK:**  That's right, Your Honor.

11          **THE COURT:**  I don't remember who won, but whatever
12  the --

13          **MR. PAK:**  It was a non-infringement finding by the
14  jury.

15          **THE COURT:**  A defense verdict?  All right.  So, I
16  mean, there are issues, maybe even claims preclusion
17  consequences from that, which adds an entirely -- I mean, I
18  don't know if you have been through them, but those are
19  difficult exercises that just cost people a fortune.

20          **MR. ANDRE:**  Your Honor, may I address that?

21          **THE COURT:**  Yes.

22          **MR. ANDRE:**  I appreciate your suggestions here today.
23     With the previous cases Finjan has taken a consistent
24  claim construction every single time, whether it be in the PTAB
25  or in District Court.  The constructions have come down

1  already.

2      Every one of the claims and every one of the patents in
3  this case have been construed multiple times already by either
4  a District Court and the PTAB already.

5      There are continuing cases.  As you said, there's three
6  other cases that are pending claim construction that will come
7  down this year.

8          **THE COURT:**  At least three this year.

9          **MR. ANDRE:**  There's three this year and then there
10 would be more coming down the road, the cases filed recently.
11 How these cases come to be is, like, for example -- I'll give
12 you one example.

13     Finjan tries to negotiate licenses.  It usually takes two
14 to three years.  In this case they contacted Fortinet back in
15 2016, I think it was the end of the year, and they negotiated.
16 When they reached an impasse, they have a -- they're kind of
17 put into a choice, whether they let it go and lose the rights
18 or they file a case.

19     When they file a case -- in this district we filed cases,
20 in the Northern District of California, because that's where
21 Finjan is located.  The cases have never been consolidated to
22 one judge.

23     As you said, the senior judge has the right to not
24 consolidate them.  And at that point Judge Armstrong was the
25 senior judge and on two occasions -- one time all the cases

1  were transferred to her.  She transferred them back.

2  **THE COURT:**  Just strictly speaking, we have senior
3  judges as a title.  It's the judge with the lowest number.

4  **MR. ANDRE:**  She was the judge with the lowest number.

5  **THE COURT:**  So I don't hear about it from --

6  **MR. ANDRE:**  The judge with the lowest number.

7     Our suggestion, and we don't know what the right solution
8  is, to consolidate these in some type of, like, a little mini
9  MDL.

10  **THE COURT:**  Let me just jump in.  That is a
11  possibility.  You know, I -- we all handle a number of MDLs
12  here.  They are usually inter-district.  And that has to be the
13  criterion.  It has to be a bunch of different districts, but I
14  don't think it is necessarily out of the question to have an
15  intra-district MDL.

16     Now, it's probably too late for that.  If you think
17  there's going to be a continuing series of these cases, that
18  might be something for you to think about.

19  **MR. ANDRE:**  Yeah.  It obviously would benefit us to
20  have consistency because we actually like the claim
21  construction we have been getting consistently and with the
22  PTAB and in District Courts.

23  **THE COURT:**  I will say my very first MDL was, in
24  fact, a patent MDL.  Now, they are a little bit different
25  because the infringement stories tend to be *sui generis* for

1  each defendant.

2  Nevertheless, there is a lot of pretrial stuff that you
3  can do.  You can -- almost everything actually until you get to
4  the infringement allegations themselves.  That's just a thought
5  for the future.

6  **MR. ANDRE:**  It's something I will bring up with my
7  friend here, that we will -- we'll talk about that possibility.
8  I don't know if it's realistic --

9  **THE COURT:**  It may be too late.

10  **MR. ANDRE:**  The timing of the cases, some are gearing
11  up for trial this year.  Some are in 2021.  So we have cases
12  spanning over a large period of time in this district.

13  **THE COURT:**  Well, that's another issue.  I set trials
14  in 18 months.  So you all -- you all are likely to be in a
15  somewhat potentially odd position in that my case could be
16  tried before the cases in San Jose or wherever the judges are
17  setting things out for a couple years.

18  **MR. ANDRE:**  We would appreciate that.

19  **THE COURT:**  Well, it just -- it creates a problem for
20  them at that point.

21  What I would like to suggest doing is, Mr. Andre, and what
22  you've observed about claim construction practices, if that's
23  the case, I mean, you ought to be in a position at this point
24  to just maybe approach Mr. Pak and say, "Here is the
25  construction.  We'll stipulate to it."

1     If Mr. Pak has no problem with it, maybe I don't have to
2 do anything.  If he wants a chance to raise an argument that
3 maybe hasn't been raised before, why not.  You can do a better
4 job of -- although you can do whatever you want because you
5 haven't had your day in court, but, you know, you can at least
6 do that.
7     Same thing with *Dauberts*.  Are you using the same expert
8 in all these cases?
9         **MR. ANDRE:**  Not all of them.  There is some
10 variability just because of schedules and certain areas of
11 expertise.
12         **THE COURT:**  Experts are rolling through several of
13 these.
14         **MR. ANDRE:**  And it is not a small coincidence.
15 Defense counsel seems to be rotating as well.  Mr. Pak has been
16 in two or three of these cases as well.  So we --
17         **THE COURT:**  They are all individual separate
18 defendants.
19         **MR. ANDRE:**  Separate defendants, but same defense
20 counsel.  So we're seeing the same defense counsel time and
21 time again as well, so we have a relationship with them.  It's
22 not like we don't know who they are.
23         **THE COURT:**  Well, that's good.  That's what I wanted
24 to hear.  I'd like you to just take 30 days.  Let's just put
25 everything on ice and work out a battle plan.  What agreements

can you reach on all of these issues?

I am as concerned about letting everything go ahead as if nothing has happened. That just seems wrong. At the same time I'm not sure what putting this thing on ice for two years is going to do anyway.

So I really want you to reach that middle ground if you can. If you can't, I'll just have to make some decisions. Give it a shot. Okay? You're both experienced patent practitioners. You know each other. I think you can get something done. If you can't, give me a menu of options and I'll make some choices.

**MR. PAK:** Your Honor, one of the issues that I think we're going to face is the breadth of the claims. We're looking at 293 patent claims from nine patents.

**THE COURT:** How many?

**MR. PAK:** 293 claims from nine patents in this case. I think one --

**THE COURT:** I have a limit of ten.

**MR. PAK:** So what we've dealt with in the past --

**THE COURT:** Are you aware of that?

**MR. PAK:** What --

**THE COURT:** I actually do. It's in my standing order.

**MR. PAK:** So one thing I think, no matter how we deal with this case, what would benefit all of us is having an early

1  streamlining of the actual claims that are going to be
2  litigated.
3              **THE COURT:**  A great thing to talk about.
4              **MR. PAK:**  It doesn't make any sense for us to
5  litigate nine patents, 293 claims, only to have Finjan elect 10
6  at the end of the day.  That's an incredible waste of mutual
7  resources.
8              **THE COURT:**  Have all 293 of those claims been
9  construed at least once by another judge?
10             **MR. ANDRE:**  No.  The terms are common.  They're --
11 the same terms are found in almost all the independent claims.
12             **THE COURT:**  Oh, I see.
13             **MR. ANDRE:**  So all of the disputable terms have been
14 construed for the most part.  I think you can probably pick
15 something out of a dependent claim that hasn't been construed,
16 but for the most part there is a standard set of claims that we
17 tend to assert have survived the IPR process and have gone
18 through to trials, multiple trials, and that's ones we tend to
19 assert over and over again in these cases.
20             **THE COURT:**  All right.  I think even just looking at
21 it from a judicial estoppel point of view, you should be in a
22 position, I would think -- Finjan should be in a position to
23 say, Here is how we construe this term and we're not going to
24 ask for a construction.  This is our construction.  And you
25 would just tender that.  If you can't agree, you would just

1  tender that to me and Mr. Pak would make whatever arguments he
2  would like, but it would not be -- it would really just be,
3  here is the definition.
4           **MR. ANDRE:**  That is --
5           **THE COURT:**  Something along those -- you see what I'm
6  saying?  I don't want to tie your hands, but just work it out
7  so we get over these -- we just can't pretend that this is the
8  first time a federal judge has looked at the case.  We just
9  can't do that.  I know you're not suggesting that.
10      I also can't -- I just can't throw up my hands and walk
11 away from it either.  So we have to find somewhere in between
12 where we can all live with.
13      You know, sometimes you win, sometimes you lose.
14 Everybody has an incentive to be responsible about money.  And
15 I think that cuts on both sides.  It's not just the defense
16 side.
17          **MR. PAK:**  We appreciate that, Your Honor.
18          **THE COURT:**  So 30 days.  Is that enough?
19          **MR. ANDRE:**  That's fine.
20          **MR. PAK:**  Yes.  We'll work on the --
21          **THE COURT:**  If you need more time, just let me know.
22 What I would suggest is just file a report, just a joint status
23 report.  If there is something you would like to come in and
24 talk about, I would be perfectly happy to have you in.
25          **MR. ANDRE:**  Your Honor, another thing.  I don't know

1  if this has been addressed or not.  I apologize if it is has.
2  Earlier mediation.
3          **THE COURT:**  Oh, sure.
4          **MR. ANDRE:**  The parties had talked for almost two
5  years before this case was filed.
6          **THE COURT:**  Oh, is that right?
7          **MR. ANDRE:**  Yeah.  So they had a lot of conversations
8  back and forth and they got to an impasse, but sometimes I
9  think a good magistrate judge can kind of get past that.  I
10 don't know if that's in the interests of the defendants or not,
11 but it's something we would be interested in doing.
12         **THE COURT:**  Before I ask Mr. Pak, do you have any
13 preferences for a magistrate judge?
14         **MR. ANDRE:**  You're talking to me?
15         **THE COURT:**  Yes.  Before I ask Mr. Pak, yes.
16         **MR. ANDRE:**  I've had -- we've had -- not with Finjan,
17 but we have had some good luck with Magistrate Judge Kim.
18         **THE COURT:**  Judge Kim?
19         **MR. ANDRE:**  Yeah.  She does a very good job.
20         **THE COURT:**  Okay.
21         **MR. PAK:**  Your Honor, I haven't had the chance to
22 speak with the client about the potential for mediation, but I
23 would like to do that and perhaps what I would suggest is as
24 part of this 30-day period, if I could have a chance to speak
25 with the client, explore some of these options, whether it's

1   private mediation or through a magistrate judge, and we could
2   include that in the status report to Your Honor.
3           **THE COURT:**  Fine.  I'm perfectly happy to refer you
4   to Judge Kim, but just -- in fact, I probably will, but just
5   let me know after 30 days if you want to do something else.
6           **MR. PAK:**  Sure.  Will do.
7           **THE COURT:**  Just out of curiosity, do you ever use
8   anybody -- one of the brand names in private practice?  Who is
9   that guy in L.A. everybody likes to go to?  It's not Lane
10  Kiffin.  It's Lane Feltz?
11          **MR. PAK:**  Lane Feltz, yes.
12          **MR. ANDRE:**  There is a guy in Hawaii --
13          **THE COURT:**  If you don't know his name, I assume you
14  don't go to him, but...
15          **MR. ANDRE:**  We have had mixed results with the
16  private practice folks.  It's something we can obviously engage
17  in down the road as well.
18          **THE COURT:**  If you don't mind, I'm just curious about
19  that.  When you say "mixed results," meaning you just haven't
20  been that happy with the process?
21          **MR. ANDRE:**  It's the -- the results we're getting is
22  one that they tend to give up pretty quickly.  The ones we've
23  dealt with.  Like I say, it's been mixed.  They come in and
24  within an hour they say you're hopelessly apart.  There's
25  nothing --

1   **THE COURT:** After you've paid ten grand or something
2   like that.
3   **MR. ANDRE:** They get their daily fee regardless and
4   they tend to walk away from it. So it is something that we
5   have had -- we have had some decent results with senior retired
6   judges in JAMS. They tend to do a little more thorough job, we
7   think, than some of these private folks.
8   But like I said, it's -- we're always open to any
9   possibility.
10   **THE COURT:** All right. Well, Mr. Pak, has that been
11   your experience as well?
12   **MR. PAK:** Actually, we had some good success with
13   certain private mediators. I agree with counsel, who you
14   choose is very important.
15   **THE COURT:** All right. If you want to discuss
16   another judge, that's fine. I know Judge Kim does this, but if
17   you have any preference, there is no judgment. Whatever you
18   want to do is fine with me. I just want to make sure you're
19   both comfortable.
20   And don't worry about if you want to do someone else, just
21   tell me. Okay? It's not an issue. All right. But do pick
22   someone because I want to get that started. And who knows,
23   maybe that's the ultimate answer here. I don't know.
24   But in the meantime, work out some kind of a proposal and
25   if there are sticking points, I will have you in and we will

```
 1   work through them.
 2           Anything else for today?
 3               MR. ANDRE:  No.
 4               THE COURT:  Mr. Pak?
 5               MR. PAK:  No, your Honor.
 6               THE COURT:  Thank you very much.
 7               MR. PAK:  Have a good day.  Thank you.
 8               MR. ANDRE:  Thank you.
 9           (Proceedings adjourned.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Wednesday, January 16, 2019