UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA    **ORIGINAL**

Before The Honorable JAMES DONATO, Judge

| | | |
|---|---|---|
| FINJAN, INC., | ) | **Status Conference** |
| | ) | |
| Plaintiff, | ) | Pages 1 - 16 |
| | ) | |
| vs. | ) | NO. C 18-06555 JD |
| | ) | |
| FORTINET, INC., | ) | |
| | ) | San Francisco, California |
| Defendant. | ) | |
| _____ | ) | Thursday, February 21, 2019 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:        Kramer Levin Naftalis & Frankel LLP
                      990 Marsh Road
                      Menlo Park, California  94025
                 BY:  PAUL ANDRE, ATTORNEY AT LAW


For Defendant:        Quinn Emanuel Urquhart & Sullivan LLP
                      50 California Street, 22nd Floor
                      San Francisco, California  94111
                 BY:  ANDREW HOLMES,
                      IMAN LORDGOOEL,
                      SEAN PAK, ATTORNEYS AT LAW




Reported By:        Raynee H. Mercado, CSR No. 8258


   Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1    Thursday, February 21, 2019                          3:32 p.m.
 2                         P R O C E E D I N G S
 3           THE CLERK:  Calling civil 18-6455 (sic), Finjan, Inc.
 4    versus Fortinet, Inc.
 5                     (Pause in the proceedings.)
 6           MR. ANDRE:  Good afternoon, Your Honor.  Paul Andre
 7    for Finjan.
 8           MR. PAK:  Good afternoon, Your Honor.  Sean Pak on
 9    behalf of Fortinet.
10           THE COURT:  All right.  Well, I don't know what to
11    do.  What are your ideas?
12           MR. ANDRE:  Your Honor, we were -- we worked out a
13    schedule between us that we all -- we agree on that.  Sitting
14    in the back room, we worked out a narrowing schedule where we
15    kind of split the difference.  All of our -- we're in
16    agreement -- I don't know if Your Honor is; I think that's
17    what it comes down to -- with the schedule we proposed.
18           THE COURT:  Well, I mean, just -- I don't think my
19    inquiry and the inquiry of at least another judge I know,
20    maybe more, about how to handle all this mass of stuff -- I
21    just don't -- I just don't know what the road map is.
22        I mean, there are vague suggestions I do this and I do
23    that and I look at this and look at that, but that's not
24    really helpful.
25           MR. PAK:  Your Honor, I think we -- what we tried to
```

1   do is we heard you loud and clear, that there are --
2            **THE COURT:**  By the way, it's not just me.  I know at
3   least one other judge is on the record with this, and I know
4   others are going to be --
5            **MR. PAK:**  Absolutely, Your Honor --
6                      (Simultaneous colloquy.)
7            **THE COURT:**  This is kind of a systemic problem, which
8   is what I'm trying to get out.
9                      (Simultaneous colloquy.)
10           **THE COURT:**  So I'm hoping for some solution other
11  than, oh, just dump it on some judge.  That's not going to
12  happen.
13           **MR. PAK:**  Right.
14           **THE COURT:**  Or well, let's just see what happens with
15  the other orders and you can take them into account.  That
16  defeats the purpose of the efficiencies.
17     Anyway, go ahead.
18           **MR. PAK:**  Yeah, so, Your Honor.  What we tried to do
19  was we went back and we actually worked with counsel for
20  Finjan to try to accommodate these different interests.  You
21  know, one is in terms of delaying some of the heavy discovery
22  in the case until we get to some point where we have better
23  understanding of claim construction issues, the prior art,
24  some of the statutory issues, the *Alice* 101 issues that are
25  being decided by different judges.

And so the agree -- if you turn to page three of the joint proposal, Your Honor, I think the most important date here is May 1st, 2020 would be the start of most of the fact discovery in the case.

But what we're going to do, Your Honor, is we're going to front-load very early within about a month.  We will be producing source code in this case, as well as technical documentation all on the accused products to enable Forti- -- to enable Finjan to be able to put together their infringement contentions based on confidential information.  And so we have that disclosure occurring early in the case.

And as Mr. Andre recommended or referenced earlier, we've worked out a compromise in terms of the narrowing of the case, which the other aspect, Your Honor, you know, is how do we avoid some of this inefficiency if we can quickly figure out, these are the claims that are actually based on some type of factual evidence according to Finjan in terms of the infringement.  We would narrow our prior art theories and references as well.

So on page 2, what we have now, based on this compromised agreement that Mr. Andre and I just worked out, on June 28th of this year, Finjan has agreed to narrow their asserted claims down to 37.  So this would be quite a reduction from the numbers that we were discussing with Your Honor first time we were here, which is over 200 in the complaint.

1           We would get to 37 asserted claims.
2                **THE COURT:** All right.
3                **MR. PAK:** Then three -- about three months after
4    that, on September 26 of this year, Your Honor, we have agreed
5    to narrow our prior art references to 72, so that's an order
6    of 2 to 1 in terms of claims to prior art references.
7           Then if Your Honor turns to page 4 --
8                **THE COURT:** Let me just jump in.
9                **MR. PAK:** Yes, sir.
10               **THE COURT:** I got all that.
11          What -- Which case here in this list is -- which prior
12   case that's already pending in this district is that one that
13   overlaps the most with the claims and patents here?
14               **MR. PAK:** I believe it's *Checkpoint*?
15               **THE COURT:** *Checkpoint* action?
16               **MR. PAK:** Your Honor, yes.
17               **THE COURT:** Okay. And everything in -- everything in
18   this case is at issue in *Checkpoint* in terms of claims and
19   patents?
20               **MR. PAK:** I believe there's one patent -- one or
21   maybe one or two patents that are not in the *Checkpoint* case,
22   but it would be in the other two cases, the *Juniper* case as
23   well as the *Sonic Wall* case.
24               **THE COURT:** Okay.
25               **MR. PAK:** But the greatest overlap is with the

1  *Checkpoint* case.
2          **THE COURT:** All right. Can you -- do you know which
3  patents are not in either case?
4          **MR. PAK:** Yes. We can find that out.
5                  (Pause in the proceedings.)
6          **THE COURT:** That was for both -- I mean, you're the
7  master of the complaint, so you should be -- plaintiffs
8  probably should be telling me this.
9      Which claims are not in either of the other cases?
10         **MR. ANDRE:** Your Honor, unfortunately I don't have
11 the information in front of me. If Mr. --
12         **MR. PAK:** Yes.
13         **THE COURT:** Oh, all right.
14         **MR. PAK:** I have that information, Your Honor.
15         **THE COURT:** All right. What do we have, Mr. Pak?
16         **MR. PAK:** In the *Checkpoint* case, Your Honor, all the
17 patents are at issue except for the '822 --
18         **THE COURT:** '822.
19         **MR. PAK:** -- and the '305 patents.
20         **THE COURT:** All right. And there -- there's no other
21 case where the '822 or '305 are an issue?
22         **MR. PAK:** No, then we have -- oh, and also -- oh,
23 sorry. And also '408. But then if you jump to the *Juniper*
24 case, we have the '408 patent covered.
25         **THE COURT:** Oh. Okay.

1          **MR. PAK:** Okay.
2          **THE COURT:** And what about the '822, is that anywhere
3  else?
4          **MR. PAK:** And the '822 is in the *Sonic Wall*.
5          **THE COURT:** Same claims?
6          **MR. PAK:** I believe they've asserted at least
7  overlapping claims.  I'm not sure if it's the same set of
8  claims, but I know that the claims are --
9          **THE COURT:** All right.  Well, let me just tell you
10 what I'm thinking, and then we can talk about it.
11     I am strongly inclined -- I'm not persuaded yet -- but I'm
12 strongly inclined to just stay everything, every patent and
13 claim that's in another case.  And then you all can do a
14 judicial estoppel motion or issue a claim preclusion or
15 something like that.
16     But if there's a patent or a claim within a patent that's
17 not covered -- in other words new here -- this is the first
18 time it's come up, that seems fine.  Okay?
19     So maybe rather than doing this on the fly, why don't you
20 sift through it.  Seems like the plaintiff should take the
21 lead on that.  But however you want to do it.  And tell me in
22 a joint statement what is here on a unique basis.  Okay?
23     And then I'll factor that in, and I'll decide what I'm
24 going to do.  But churning and burning in two, three, five,
25 seven courtrooms on the same claims and same patents is not

1  going to happen here.  I've said that before.  It's just not
2  going to happen.
3      And I can tell you that there is a movement afoot to make
4  sure it doesn't happen anywhere.  But at least we're going to
5  draw the line here.  Okay?
6      So -- but now, I'm not a hundred percent convinced on that
7  course, but let's at least --
8          **MR. PAK:**  Yes.
9          **THE COURT:**  -- sift it down to anything that might be
10 unique.  And if there is nothing here that is unique, just let
11 me know that as well.
12         **MR. ANDRE:**  Your Honor, and you're talking about
13 claims of the patent or just the patent in general?
14         **THE COURT:**  No.  Claims in the patent.  So for
15 example, if the '305 patent is in five cases, but it's claims
16 one through seven, and you're raising claims eight through ten
17 here, and they're not raised any other case, that's fine.
18         **MR. ANDRE:**  Okay.
19         **THE COURT:**  Okay?  It needs to be on the claim level
20 in my view, because I can construe those claims on a clean
21 text, clean slate without having to worry that things are
22 going to go awry in the way that I'm concerned about.
23     I mean, you think it should be on a patent basis --
24         **MR. ANDRE:**  No, no --
25         **THE COURT:**  -- and less granular?

1   **MR. ANDRE:** I think if we're going to do this
2   procedure, on a claim basis, it makes sense.
3        **THE COURT:** Claim basis makes sense.
4        **MR. ANDRE:** But, Your Honor, I think the issue -- I
5   think it raised last time I was here is this is a -- I mean,
6   we're stuck in a circumstance where we've -- we're not able to
7   get to the same -- same judge with all the different patents.
8   In the way the district has split them up, that's not of our
9   making necessarily, and so -- other than the fact we brought
10  claims in this district.
11     So I think the issue I would have is the indefinite stay
12  pending -- I don't know what would trigger the lifting of the
13  stay.
14       **THE COURT:** Well, I don't know either. We're going
15  to have to think that out, 'cause this is novel territory for
16  everybody. Just thinking off the top of my head -- and don't
17  use this against me 'cause I'm just talking off the top of my
18  head as you are -- I'm not going to use it against you
19  either -- if, you know, ten claims get decided this year in a
20  claims construction, then you can let me know.
21     And one of you will bring a motion saying, "I like it."
22  Okay? It's -- someone's going to win. Plaintiff --
23  plaintiff's going to win or maybe something on the defense
24  side is going to win, and you're going to come and tell me,
25  this is the way to go, or you're -- defendant's going to tell

1  me, this is the way to go.
2          **MR. ANDRE:**  This is just on the claim construction,
3  because obviously our claims for infringement and --
4          **THE COURT:**  Well, I'm only using claim construction
5  as that tends to come first.  If there are *Alice* motions, that
6  might be a trigger as well.
7      Just looking at the -- you know, there are peak points in
8  case management, so -- now, I'm not even sure *Alice* is a good
9  example, because some of us, like me, believe *Alice* should be
10 brought in the motion to dismiss stage.  Some judges prefer to
11 bring it later.  It's just key events, okay?
12     So I'm not fixating on claim construction, but that tends
13 to be a highly important moment in the life of a patent case.
14         **MR. ANDRE:**  And reason I ask --
15         **THE COURT:**  You can send me, you know, updates
16 saying, oh, well, these five claims were thrown out on Section
17 101 motion, or they were sustained on a Section 101 motion.
18         **MR. ANDRE:**  I mean -- And the reason I ask, Your
19 Honor, is 'cause there is -- there are issues -- like, for
20 example, what -- we have a -- a Finjan/Sonic Wall *Markman*
21 hearing --
22         **THE COURT:**  You have a what?
23         **MR. ANDRE:**  Finjan/Sonic Wall.
24         **THE COURT:**  Sonic Wall.
25         **MR. ANDRE:**  That *Markman* hearing's set for March 1st,

1   in --
2           **THE COURT:**  All right.
3           **MR. ANDRE:**  -- just two weeks.
4      We received two claim construction orders just last week,
5   and that wasn't with the overlapping cases.  But then we had
6   a -- I had a hearing this morning with Judge Alsup in *Juniper*,
7   and there may be a procedure there where that case may just go
8   up to interlocutory appeal, and a lot of those claims will be
9   dropped, so --
10     We'll update Your Honor as --
11          **THE COURT:**  Yeah.  Just use your judgment on key
12  events and just let me know and --
13          **MR. ANDRE:**  And it's just these overlapping cases we
14  need to worry about, the ones listed in this --
15          **THE COURT:**  Well, let's -- no, first, I want to --
16  I'd like to hear from you if there's anything that's not
17  overlapping anywhere, okay?  And if that -- if there is a box
18  that you have substance for that in, then we'll probably just
19  go forward on those, okay?  'Cause we're fine.
20          **MR. ANDRE:**  Okay.
21          **THE COURT:**  If it turns out that everything is
22  overlapping -- in other words, at least one other judge is
23  looking at exactly the same patent and exactly the same claim,
24  then we're going to -- this will be the next plan, which is
25  we're going to wait till those issues ripen somewhere else.

1     And, you know, there are -- there are doctrines -- you
2  know, issue and claim preclusion and estoppel are tailor made
3  for these situations.  They are designed specifically as
4  doctrines of judicial efficiency, so we're going to take
5  advantage of them.
6          **MR. ANDRE:**  And so in that regard, for example, some
7  of the -- the patents in this case -- I mean, we've already
8  taken 101 challenges and survived them on the *Alice* issues,
9  can we bring that to Your Honor's attention as well?
10         **THE COURT:**  Absolutely.
11         **MR. ANDRE:**  Okay.  So to the extent that we have the
12 issues that, for example, numerous IPR's have been filed
13 against these patents, and the patents have survived all the
14 IRS's, and same with the 101 challenges.
15         **THE COURT:**  Has that actually happened?
16         **MR. ANDRE:**  Yeah, we've had almost 80 IPR's.
17         **THE COURT:**  Oh, interesting.  And you've lived
18 through all of them?
19         **MR. ANDRE:**  We have.  We've had good luck with IPR's.
20         **THE COURT:**  Eighty?
21         **MR. ANDRE:**  Eighty.  I think somewhere in the
22 neighborhood.  It's --
23         **THE COURT:**  You all should, like, subsidize -- pay a
24 subsidy to the federal -- anyway.  Okay.
25     That -- you know, that's fine.  I agree with that.

     Now, let me also be clear. You may -- you may win six 101 motions, but if Mr. Pak in a moment of brilliance comes up with an argument that has not been raised in those prior cases, of course, everybody will have the right to do that.

     The same for the plaintiffs. All right? You may -- you may lose six *Alice* motions, but if you come up with something that the court -- no court has looked at yet, you can certainly raise that. All right?

     So I'm going to relying on you two to be -- good judgment, cooperative, and let me know where the soft spots are. I will tackle the soft spots. I just -- we're just not going to do the same thing over and over and over again. That's just not going to happen.

     You understand what I'm saying.

     **MR. PAK:** Absolutely, Your Honor.

     **THE COURT:** Yeah. Okay? So no one's foreclosed on brilliant new arguments or even not brilliant. Nobody's foreclosed on a chance to raise an argument that hasn't had its time in court. That's perfectly fine. All right? So it's not by the pound. It's by the novelty.

     **MR. ANDRE:** So should we take this agreed-to schedule, then, and kind of toss it out the window at this point, or --

     **THE COURT:** Well, I wouldn't necessarily toss it out the window, but I would like some more information. So sift

1  it down.  And then after you do that, let's figure out where
2  exactly we are.  And if it turns out you have a handful of
3  claims that are here for the first time ever, then you might
4  just want to propose a schedule for those and a stipulation to
5  put everything else on a kind of a rolling deferral.  That's
6  how we'll call it.  Okay?  To be re-examined whenever there's
7  a key event.  All right?
8      And if it's turns out that there are no issues that can be
9  segregated for treatment here, then we'll have to come in and
10 visit a little bit more.  All right?
11     And this -- look, this is a -- this is a complicated
12 situation.  It's novel.  It's very interesting.  And we just
13 have to have an efficient way of managing it.  That's all that
14 I'm asking for.  I want everybody to have their day in court
15 obviously, and you will have that.  But let's just do it in a
16 way that really counts that's all.
17     Okay?
18          **MR. PAK:**  Appreciate that, Your Honor.
19          **THE COURT:**  All right.
20          **MR. PAK:**  Let us work together.  In about a week --
21          **THE COURT:**  Are you two working well together?  You
22 look like you are.
23          **MR. PAK:**  We always work as well together, sometimes
24 not always in front of the jury, but that's the nature of the
25 profession.

```
 1              THE COURT:  Have you tried any of these Finjan cases?
 2              MR. PAK:  Yes.  We have.  I did the Symantec case in
 3   Delaware, Your Honor.
 4              THE COURT:  And you've been trying them, too.
 5              MR. ANDRE:  Since 2005.
 6              THE COURT:  This is your main thing, right?  Well,
 7   one of your main things.
 8              MR. ANDRE:  It's been a good client.
 9              THE COURT:  No, just out of curiosity, what are you
10   doing in my colleague's courtroom at the circuit?  You said
11   that you're going express something?
12              MR. ANDRE:  He said if we would take the two
13   patents -- he did a shoot-out.  And if we agree that the --
14   that he'd certify those two patents for interlocutory appeal,
15   and we let that decide the rest of seven patents or five
16   patents in the case.
17       It was just a -- it was -- unique circumstance, 'cause it
18   was teeing up to have seven different trials the way he set it
19   up.  It was not a very efficient.  It didn't force the parties
20   to settle.  I think that's what the whole purpose was.
21              THE COURT:  Didn't work out.
22              MR. ANDRE:  No, it just kept going on and on.  It was
23   going to be a -- I think he abandoned the shoot-out idea.
24              THE COURT:  I don't think litigants appreciate how
25   each courtroom really does have its own approach to things.
```

```
 1    You have to be in the well, like you two are, to understand
 2    that we are a highly diverse bench.
 3         Look, I mean, we're neighbors.
 4              MR. ANDRE:  Exactly.
 5              THE COURT:  Okay.  Anything else I can help you with
 6    today?
 7              MR. PAK:  No, Your Honor.  So we'll confer and submit
 8    something within a week.  Would that be acceptable, Your
 9    Honor?
10              THE COURT:  Yeah, just, you know --
11              MR. PAK:  Identifying --
12              THE COURT:  You've done a good job communicating
13    information.  Just keep it that way.  Just plain and simple.
14    Just spell it out for the judge, and I'll take it from there.
15    And I'll probably have you come back in for some more
16    discussion.  Okay?
17              MR. PAK:  Sounds good.  Thank you, Your Honor.
18              THE COURT:  All right.  Thank you so much.
19                 (Proceedings were concluded at 3:48 P.M.)
20                              --o0o--
21
22
23
24
25
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____
Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Wednesday, February 27, 2019